IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| E.R., by her parents and next friends,<br>L.V.R. and E.R.,<br><br>and<br><br>L.V.R. and E.R.,<br><br>     Plaintiffs,<br><br>    v.<br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation,<br>One Judiciary Square,<br>441 Fourth Street, NW,<br>Washington, D.C. 20001,<br><br>     Defendant. | **Civil Action No. _____** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1. This is an action brought by L.V.R. and E.R. ("the parents"), in their own right and on behalf of their daughter, E.R., alleging that the District of Columbia Public Schools ("DCPS" or "school system"), and the Office of the State Superintendent of Education ("OSSE"), failed to provide E.R. with the free appropriate public education ("FAPE"), to which she is entitled under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400 *et seq*. DCPS and OSSE denied E.R. a FAPE when they failed to propose an appropriate educational program and placement for the 2023-2024 and 2024-2025 school years. The Hearing Officer who heard the administrative Due Process appeal and decided the action compounded these violations when he found that DCPS offered E.R. a FAPE for the 2023-24 school year. He further improperly concluded, despite DCPS denying E.R. a FAPE by failing to have an appropriate IEP in place for her at the start of the 2024-25 school year, that DCPS and OSSE did not deny her a FAPE by

1

proposing to move her mid-year and thus that the parents were only entitled to reimbursement for E.R.'s private school tuition for the first half of the 2024-25 school year.  In so doing, the Hearing Officer excused defendant's failure to adhere to applicable authorities governing special education and the provision of a FAPE by denying the parents their requested relief.  Because of any of these errors, the Court should reverse the Hearing Officer's Decision in part and award the parents full reimbursement for E.R.'s placement at the Maddux School ("Maddux") for the 2023-2024 and 2024-2025 school years.

## Jurisdiction

2.	This Court has jurisdiction pursuant to the IDEA, 20 U.S.C. §§ 1400 *et seq*., and 28 U.S.C. §§ 1331 and 1343.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3.	Plaintiffs have exhausted their administrative remedies and seek to reverse the Decision of a Hearing Officer in the Office of Dispute Resolution of the Office of the State Superintendent of Education, Case Number 2025-0054 (June 15, 2025).

## Parties

4.	E.R. is a seven-year-old, educationally disabled student who at all times relevant to this action resided in the District of Columbia.  Her parents bring this action on E.R.'s behalf and in their own right.

5.	The District of Columbia is a municipal corporation receiving federal funds under the IDEA.  20 U.S.C. §§ 1400 *et seq*.  DCPS is a local educational agency as defined by 20 U.S.C. § 1401, and as a part of the District of Columbia, receives financial assistance from the United States Department of Education.  DCPS is responsible for complying with federal law with respect to the provision of a FAPE to each educationally disabled student in the District of Columbia.  OSSE is the state education agency for the District of Columbia, and as such is

responsible for complying with federal law with respect to each educationally disabled student in the District of Columbia.

## Factual Allegations

6. E.R. is a seven-year-old student who currently attends the Maddux School ("Maddux").

7. E.R. has been diagnosed with Attention Deficit Hyperactivity Disorder-Combined Type ("ADHD"), Autism Spectrum Disorder ("ASD" or "Autism"), a Speech Sound Disorder, and a Developmental Coordination Disorder.

8. E.R. has been found eligible for special education services by the District of Columbia Public Schools ("DCPS" or "school system"), as a student with Autism.

9. E.R.'s parents reported early difficulties with motor development and speech/language milestones, and also that she was highly sensitive to a variety of noises, including animal sounds and other frequently encountered sounds such as a baby crying or kids screaming.

10. E.R. attended prekindergarten at the French Maternal School ("FMS"), for the 2022-23 school year.

11. In order to gain an understanding of her diagnostic profile, E.R. underwent a neuropsychological evaluation in July of 2022 by Dr. Kara Rudisill of the Stixrud Group. E.R.'s parents shared that while she was a socially motivated child who was typically excited to see her friends, she struggled with social/emotional reciprocity and language comprehension. They reported that she could become overwhelmed in group social environments, such as a friend's birthday party where she experienced an intense meltdown during the Happy Birthday song.

12. Dr. Rudisill found that E.R.'s difficulties consistently impacted her daily functioning across multiple environments. Specifically, E.R. struggled to engage socially with peers and verbally articulate her concerns or frustrations. She also struggled to adjust to unexpected transitions and was highly sensitive to sound.

13. Based on the test results and her history, Dr. Rudisill diagnosed E.R. with an Autism Spectrum Disorder, without accompanying intellectual impairment, with accompanying language impairment, level 1. She recommended intensive Applied Behavior Analysis ("ABA"), services in order to develop her functional language, social communication, social interaction and responsiveness, play and engagement, self-help, and safety skills. Finally, Dr. Rudisill recommended that E.R. be provided an IEP as a student with Autism and receive both outpatient and school-based speech/language intervention services.

14. In response to Dr. Rudisill's evaluation and recommendations, the parents began providing E.R. with outside related services, including ABA and speech/language.

15. In the fall of 2022, her parents referred her to DCPS Child Find for consideration of eligibility for special education services.

16. Dr. Rudisill reached out to the DCPS team via email in September 2022 and expressed her opinion that E.R. required intensive early intervention services through applied behavior analysis for twenty-five to forty hours per week.

17. No one from DCPS contacted Dr. Rudisill to discuss her recommendation for intensive services.

18. On December 8, 2022, DCPS found E.R. eligible for special education services as a student with Autism and developed an IEP providing just two hours per week of specialized instruction in the general education setting and two hours per month of speech/language therapy

in the general education setting.

19. For the 2023-24 school year, E.R.'s parents searched for alternative placements that could provide her with small classes and individualized instruction to address her educational needs. They applied, and she was accepted at Maddux.

20. Maddux is a nonpublic school located in Rockville, Maryland that provides small, structured classes with low student-to-teacher ratios, multi-sensory teaching, accommodations for various learning styles, and integrated speech/language and Occupational Therapy.

21. E.R. began her second year of pre-Kindergarten at Maddux in August 2023. She was one of eight children in her class, which was facilitated by two teachers and an assistant teacher.

22. E.R.'s parents reported that she thrived in the smaller, supportive setting at Maddux and would find a larger classroom environment too challenging. She experienced difficulties engaging in non-preferred activities, such as writing and working with numbers and letters. E.R. also had difficulty listening to instructions and remaining still and quiet during group activities, such as "circle time."

23. The parents served notice on DCPS on June 9, 2023 of their intent to seek public funding for E.R.'s placement at Maddux.

24. On January 25, 2024, DCPS convened an annual review of E.R.'s IEP. Notably no one on the IEP team from DCPS had ever observed or seen E.R., nor had they been a part of the Early Stages team that had evaluated her and developed her initial IEP.

25. The IEP team went through the IEP and updated the present levels of performance and goals and objectives. At the end of the January 2024 IEP meeting, DCPS proposed just a slight increase to 3 hours per week of support in the general education setting, two hours per

month of speech/language services, and one hour per month for a speech/language consultation.

26. In commenting on the proposed January 2024 IEP, E.R.'s mother shared her belief that her daughter required a small, specialized, individualized environment that is structured and provides highly individualized instruction with a focus on social learning. Jennifer Engel, the Director of Maddux, shared that E.R. attended a supportive learning environment in a classroom of 8 students with 2-3 teacher and still required a lot of support in order to make progress. The parents requested that DCPS reconsider its proposal, which it declined to do.

27. In February 2024, E.R. underwent another neuropsychological evaluation by Dr. Rudisill to get an updated picture of her diagnostic profile. Dr. Rudisill identified several strengths and solid areas of functioning, including picture/object naming and identification, rapid naming, nonverbal reasoning, visual perception and discrimination, and fine-motor speed and dexterity. At the same time, E.R.'s pattern of challenges with social communication and interaction, in addition to restricted and repetitive behavior, remained consistent with a diagnosis of Autism, without accompanying intellectual impairment, with accompanying language impairment, level 2 (requiring substantial support).

28. Dr. Rudisill concluded that E.R.'s challenges significantly interfered with her functioning across a variety of contexts and she continued to require comprehensive supports.

29. Dr. Rudisill also found E.R. continued to demonstrate persistent difficulty with speech sound production that interfered with speech intelligibility, which prevented effective verbal communication. Therefore, she reconfirmed her previous diagnosis of a Speech Sound Disorder.

30. E.R. continued to exhibit significant challenges related to inattention,

hyperactivity, and impulsivity, consistent with her diagnosis of ADHD.

31. E.R.'s assessment results also indicated weaknesses with visuo-construction, visuomotor precision, and proprioceptive awareness, warranting a diagnosis of a Developmental Coordination Disorder.

32. Dr. Rudisill deferred any diagnoses of learning-based disabilities, but noted it remained a concern for the future and something that should continue to be monitored.

33. Dr. Rudisill concluded that E.R. would continue to benefit from the evidence-based, early intervention services provided by the Maddux School, which had been crucial in the development of her functional language, social communication, social interaction, social responsiveness, play and engagement, self-help, and safety skills.  She observed that E.R. had received a significant educational benefit since beginning there due to its low student-to-teacher ratio and regular exposure to social learning opportunities within the classroom environment implemented by specialized professionals.

34. A copy of Dr. Rudisill's 2024 evaluation was shared with DCPS on April 8, 2024.

35. In order to assist them with decisions related to E.R.'s educational programming, the parents had also been working with Dr. Paul Livelli, an educational consultant.

36. Dr. Livelli observed E.R. in her classroom at the French Maternal School on February 28, 2023, and noted that she required more prompting than her peers to continue working and did not interact with her peers.

37. Dr. Livelli next observed E.R. in her classroom at Maddux on April 10, 2024 and found that social interactions were facilitated by her instructors.  The student-to-teacher ratio was very small and she worked in dyads or triads in her core academic classes.

38. On May 5, 2024, Dr. Livelli prepared a report to summarize both of his

observations of E.R. and made several recommendations for her educational programming. He concluded that she requires extensive adult support to access the curriculum and wraparound services, including academic, psychological, and support services to ensure that she will have the skills to become independent and to thrive as an adult. Dr. Livelli also recommended that her educational program provide numerous classroom accommodations, including, but not limited to preferential seating, frequent breaks during instruction, the use of a scribe, the use of assistive technology, extended time on tests, movement breaks, and a social skills group outside of school.

39. The parents shared Dr. Livelli's report with DCPS.

40. On May 24, 2024, DCPS convened an IEP meeting to discuss evaluations of E.R. DCPS proposed to complete a formal review of Dr. Rudisill's evaluation, as well as conduct a teacher interview, classroom observation, and behavior ratings scales. The team did not propose a speech/language evaluation as her eligibility was current and she remained eligible for those services.

41. On July 30, 2024, DCPS reconvened for an eligibility meeting. E.R.'s mother shared that the end of her school year went well. Ms. Engel shared that she had made nice progress throughout the school year and ended on that trajectory. The team agreed that she remained eligible for services as a student with Autism and qualified for behavioral support services as well. DCPS requested to observe E.R. when she returned to school at Maddux on September 3, 2024, which the parents and Ms. Engel agreed to.

42. At the start of the 2024-25 school year, DCPS IEP team members went to observe E.R. at Maddux.

43. On September 20, 2024, DCPS convened a meeting to develop E.R.'s IEP for the 2024-25 school year. Her mother shared that she had been struggling since beginning school,

which DCPS noted it had also seen in its observations of her at Maddux. Ms. Engel noted that E.R. was successful when she had the right supports in place, and that those supports were intensive. Delisa Green, a DCPS speech/language pathologist, similarly noted that E.R. was only able to participate in the integrated speech group with intensive supports. The team proposed completing a Functional Behavior Assessment ("FBA"), which the parents agreed to.

44. Upon discussion of service hours during the September 2024 IEP meeting, DCPS proposed 30 hours of specialized instruction outside of the general education setting in a nonpublic day school. The proposal also included 2 hours per month of direct speech/language services, 4 hours per month of direct behavioral support services, and consultation services for specialized instruction, speech/language, and behavioral support services. The parents agreed with the service hours proposal and DCPS agreed to refer E.R.'s case to OSSE for a change in placement consideration.

45. On October 29, 2024, OSSE, DCPS, and the parents met for a change in placement meeting. E.R.'s mother shared her concerns for her in the classroom, specifically that she struggles with overstimulation, inattention, social interactions, and completing non-preferred tasks. DCPS added that her behavior is a major concern and impedes her academics. The team agreed that she required a nonpublic day placement and the parents provided consent to OSSE to begin the referral process. Her mother expressed concern regarding the significant delay in DCPS proposing a nonpublic program for E.R. and the possible harm that a mid-year transition to another program would cause.

46. E.R. was denied admission at the Sheppard Pratt School- Rockville due to the lack of an age-appropriate classroom and denied admission at the Ivymount School due to the lack of space. E.R. was accepted into the Phillips School- Fairfax ("Phillips"), as well as the

9

Foundation Learning Center ("Foundation").

47. On December 12, 2024, E.R.'s parents shared with OSSE that they had visited both Foundation and Phillips, and had concerns with their appropriateness for E.R. They also shared their concern about moving her during the middle of the school year, especially given her need for consistency and difficulty with transition. The parents informed DCPS and OSSE that they would maintain her placement at Maddux for the remainder of the 2024-25 school year and requested funding for that placement. OSSE responded that it would not place E.R. at Maddux, as it was not identified as a special education school by the Maryland Department of Education, and it would move forward with placement at Phillips.

48. On January 2, 2024, OSSE issued a Location of Services Assignment letter placing E.R. at Phillips for the remainder of the school year.

49. The parents filed a due process complaint seeking reimbursement for the tuition and related services paid to Maddux for the 2023-24 and 2024-25 school years by both themselves and E.R.'s grandmother, who assisted with the payments by providing the parents a loan, as well as prospective placement there for the remainder of the school year.

50. The due process hearing was convened in June 2025.

51. At hearing, the parents presented evidence and testimony from Dr. Paul Livelli, Jennifer Engel, and M.R.'s mother.

52. The Hearing Officer issued his Decision on June 15, 2025, awarding the parents reimbursement for E.R.'s tuition and related expenses at Maddux for the first half of the 2024-25 school year and denying the parents the remainder of their requested relief.

53. The Hearing Officer incorrectly found that DCPS did not deny E.R. a FAPE with its proposed IEP and placement for the 2023-24 school year.

54. The Hearing Officer improperly discounted communication sent by Dr. Rudisill to the DCPS Early Stages team about E.R.'s educational needs when the team was developing E.R.'s IEP.

55. The Hearing Officer erroneously ignored evidence of E.R.'s difficulty with transitions and concluded that DCPS and OSSE did not deny her a FAPE by proposing to transition her to a new program part way through the 2024-25 school year.

56. The Hearing Officer incorrectly concluded that the proposed placement at Phillips was appropriate for E.R.

57. The Hearing Officer improperly dismissed the opinions of the plaintiffs' experts and instead relied upon defendant's witnesses.

58. The Hearing Officer misstated the evidence.

59. The Hearing Officer's Decision contains multiple errors of fact and law.

60. Many of the Hearing Officer's findings of fact are not regularly made.

61. The Hearing Officer applied incorrect legal standards in reaching his Decision.

62. The parents are aggrieved by the Hearing Officer's Decision.

63. The parents have exhausted their administrative remedies.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

64. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 63.

65. Defendant's failure to provide E.R. with a Free Appropriate Public Education violates plaintiffs' rights under the IDEA and District of Columbia law.

## COUNT II

(Failure to Offer Appropriate Program and Placement)

66. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 63.

67. The failure of the Hearing Officer to order defendant to place and fund E.R. in an appropriate program and placement violates the IDEA and District of Columbia law.

## COUNT III

(Failure of the Hearing Officer to Render a Proper Decision)

68. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 63.

69. The Hearing Officer committed error and violated plaintiffs' due process rights under the IDEA and District of Columbia law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

70. The Hearing Officer committed error and violated the plaintiffs' due process rights under the IDEA and District of Columbia law by failing to apply correct legal standards.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court:

    1. Issue judgment for plaintiffs and against defendant;

    2. Issue declaratory relief that defendant violated plaintiffs' rights under applicable law;

    3. Order defendant to reimburse the tuition and related services paid to Maddux for the 2023-24 and 2024-25 school years and declare it to be her current educational placement under the IDEA;

    4. Order defendant to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

    5. Award any other relief that this Court deems just.

Respectfully Submitted,

    /s/  Michael J. Eig
------------------------------------

| Michael J. Eig | #912733 |
| Paula A. Rosenstock | #494580 |
| Matthew B. Bogin | #911552 |
| Meghan M. Probert | #1004929 |

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

*Counsel for Plaintiffs*